IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sheryl Mahoney, | ) | C/A No. 3:12-1095-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Summerton Police Dept., *Town of Summerton*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      The plaintiff, Sheryl Mahoney ("Mahoney"), filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; and 42 U.S.C. § 1981, against the defendant, Summerton Police Department, Town of Summerton ("the Town"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 20.) Mahoney filed a response in opposition. (ECF No. 31.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

      The following facts are either undisputed or are taken in the light most favorable to Mahoney. Mahoney, an African-American female, began working as a police officer for the Town of Summerton in 2009. She had a good record with no disciplinary infractions. For all but the two top ranking officers, the schedule for police officers in the Town of Summerton consisted of a "rotating schedule" with officers scheduled to work twelve-hour shifts for two days, then have three days off,

with alternating weekends off. The police chief worked twelve-hour shifts from 6:00 a.m. to 6:00 p.m. Monday through Thursday, and the next highest ranking officer, Lieutenant (now Major) Steve Phillips, worked the daytime shift Friday through Sunday. All other officers worked either day or night shifts as needed. In December 2009 Mahoney complained to the chief that she was being scheduled to work every weekend. The chief addressed the problem to Mahoney's satisfaction. In January 2010 she was scheduled for a twelve-hour night shift every day she was scheduled to work.

In April 2010 a co-worker identified as "Barry" informed Mahoney that he had overheard people threatening to ambush and kill her. Mahoney identified the threats as coming from drug dealers in the community. As a result of this information, Mahoney became anxious and fixated on the threats, which affected her ability to perform her responsibilities as a police officer. She discussed the threats with Lt. Phillips, who informed her that he was aware of the threats and that he had discussed them with Barry. Mahoney became unhappy with what she perceived as the Town's inaction regarding the threats and also perceived that Phillips did not like her because she was black and female. She complained that she was being subjected to a hostile work environment and requested that she be permitted to report the issues to "Town Counsel."[1] Additionally, Mahoney contends that when she requested to present her concerns to "Town Counsel," the police chief told her that was not allowed and that if she did so she would be terminated. She also requested to be referred to an Employee Assistance Program ("EAP"). Neither Phillips nor the police chief had heard of an EAP and Phillips apparently became frustrated with her request.

---

[1] Plaintiff repeatedly refers to "Town Counsel" in her memorandum; however, the court is unclear whether this reference is supposed to be to "Town Council" as the governing body of the Town, or to William Johnson, Esquire, who is apparently the town attorney.



The upshot of the situation was that the defendant essentially told Mahoney not to worry about the threats. Phillips provided her with a book on the subject of handling trauma, and cursed at Mahoney regarding her "obsession" with the threats. Mahoney sought help from a physician, who recommended a one-week leave of absence. He also placed Mahoney on medication. Ultimately, Mahoney obtained additional leave based on her physician's orders until August 3, 2010.

At that time, Mahoney's doctor released her to return to work with the condition that she work regular hours. Mahoney therefore requested a "straight shift"[2] so that she could stay on her medication. According to Mahoney, the request for a "straight shift" was not permanent, and she did not request that the straight shift needed to be for days only. According to the defendant, however, her accommodation request was perceived to be for an indefinite "straight day shift." The Town could not accommodate that request, and the town attorney sought additional information directly from Mahoney's physician. The parties do not appear to dispute that although Mahoney telephoned the police chief frequently about what her new schedule would be, no one ever asked her for clarification about her accommodation request or informed her that she needed to obtain additional information from her doctor. When the town attorney did not receive an answer to his direct inquiries to the doctor, the chief recommended Mahoney's termination to Town Council, which terminated Mahoney's employment on September 16, 2010.

Mahoney filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC Charge") on October 1, 2010. After receiving a right-to-sue letter, Mahoney commenced this action.

---

[2] Mahoney apparently perceived that a "straight shift" schedule, as opposed to a "rotating" one, would result in an officer working either only days or only nights, but not both.



## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there



will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.   Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).   The defendant's burden "is a burden of production, not persuasion."  Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*."  Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' "  Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' "  Merritt,



601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005).  To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence.  Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves, 530 U.S. at 148.  However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate.  Id.  Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Id. at 148-49.  "Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination."  Merritt, 601 F.3d at 294-95.

**C.     Mahoney's Claims**

   **1.     Race Discrimination**[3]

Claims pursuant to 42 U.S.C. § 1981 alleging employment-related discrimination are analyzed under the same framework used in cases brought under Title VII. See Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required *prima facie* case are the same."); see also Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (stating that the McDonnell Douglas burden-shifting framework, developed for Title VII, has been applied to § 1981 claims). "Absent direct evidence, the elements of a *prima facie* case of discrimination are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). To establish a *prima facie* case of disparate treatment based on an alleged discriminatory discharge, a plaintiff must first demonstrate that: (1) he is a member of the protected class; (2) his employment was terminated; (3) at the time of his termination, he was performing at a level that met the employer's legitimate expectations; and (4) his position remained open or was filled by a similarly qualified individual outside the protected class. See Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)); see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

---

[3] Mahoney concedes that she did not administratively exhaust any race-based Title VII claims. (See Pl.'s Mem. Opp'n Mot. Summ. J. at 16, ECF No. 31 at 16.) She therefore is pursuing her race discrimination claim based only on 42 U.S.C. § 1981.



Mahoney alleges two adverse actions. First, she alleges that the defendant's failure to accommodate her request for a straight shift was based on her race. Second, she alleges that the defendant terminated her because of her race. As to either alleged action, Mahoney must show that someone outside the protected class was treated more favorably under similar circumstances. See Coleman, 626 F.3d at 190; Miles, 429 F.3d at 485. Generally, to be similarly situated, comparators must have dealt with the same decision maker, been subject to the same standards, and engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated");[4] see also McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasizing that an employee must be similarly situated in all material respects); Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator").

In support of her arguments, Mahoney presents a putative comparator, a white police officer identified as "Coleman," who she contends was given a straight day shift for a limited time following a car accident. The defendant disputes that Coleman is similarly situated, arguing that his request for accommodation was limited in time, whereas Mahoney's was indefinite. The court agrees that the record contains no evidence showing that Mahoney ever indicated to the defendant that the open-ended written restriction from her physician regarding the necessity for Mahoney to work "regular

---

[4] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 Fed. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 Fed. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).



hours" was limited in duration. (Cf. Pl.'s Dep. at 83, ECF No. 20-2 at 27) (admitting that she did not make it clear to anyone that she was not seeking a permanent accommodation and discussing her phone calls to the chief asking to be placed on the work schedule). Accordingly, the court agrees that Coleman is not similarly situated to Mahoney in all relevant respects, precluding him from serving as a viable comparator to demonstrate that either the defendant's failure to accommodate Mahoney's work restrictions or her termination was due to her race. See Mitchell, 964 F.2d at 583; Haywood, 387 Fed. App'x at 359.

### 2. Disability Discrimination

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" includes:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). An individual satisfies the "being regarded as having such an impairment" requirement if she establishes that she has been subject to a prohibited action under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Mahoney asserts two claims of discrimination based on disability: (1) she asserts that she was terminated because of a perceived disability; and (2) she claims that the defendant failed to provide her with a reasonable accommodation as required by the ADA.



To establish a *prima facie* case of discriminatory termination based upon a disability, a plaintiff must show: (1) that she was a disabled individual within the ADA's definition; (2) that she was discharged; (3) that she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. See Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012). Here, the only element in dispute is whether Mahoney is a qualified individual within the meaning of the ADA, as the defendant disputes whether she could perform the essential functions of her job with or without reasonable accommodation. See 42 U.S.C. § 12111(8) (defining qualified individual and stating that "[f]or the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job"); Rohan v. Networks Presentations LLC, 375 F.3d 266, 279 (4th Cir. 2004) ("A job function is essential if it 'bear[s] more than a marginal relationship to the job at issue.' ") (alteration in original) (quoting Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994)); 42 U.S.C. § 12111(9)(B) (stating that "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities"); 29 C.F.R. pt. 1630, app. § 1630.2(o) ("[O]ther accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment, making employer provided transportation accessible, and providing reserved parking spaces.").

In determining whether a particular function is essential, a court may consider evidence, including but not limited to (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). For an accommodation to be reasonable within the meaning of the ADA, it must not impose an undue hardship on the operation of the employer's business. See 42 U.S.C. § 12112(b)(5)(A); see also 29 C.F.R. pt. 1630, app. § 1630.2(p) (" 'Undue hardship' refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business.").

Here, the defendant has produced evidence that the job description for a Town of Summerton police officer required the "ability to safely operate [a] vehicle both by day and night . . . ." (Purdue Dep. Ex. 2, ECF No. 20-3 at 7.) Additionally, courts have recognized that employees who cannot meet the attendance requirements of the job at issue cannot be considered qualified persons protected by the ADA. See Tyndall, 31 F.3d 209 at 213. The police chief testified in his deposition that police officers for the Town worked a rotating schedule (Purdue Dep. 17:20-18:20, ECF No. 20-3 at 3-4), and the Town had insufficient manpower to permit Purdue to accommodate what he perceived as Mahoney's request for a straight day shift. (See Purdue Dep. 38:12-39:13, ECF No. 20-3 at 5-6.) Mahoney has not refuted the defendant's showing that such an accommodation would present an undue hardship on the Town's business. Employers are not required to adjust the specifications of a post to satisfy the ADA. Myers v. Hose, 50 F.3d 278, 282 n.2 (4th Cir. 1995).



Mahoney also asserts a claim based on failure to accommodate. However, because she cannot show that indefinitely accommodating Mahoney with a straight shift was a reasonable accommodation, she cannot establish a *prima facie* case based on a failure to accommodate. See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (stating that in a failure to accommodate case, a plaintiff establishes a *prima facie* case by showing " '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.' ") (alterations in original) (quoting Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

### 3.   Hostile Work Environment

Mahoney also brings claims alleging that she was subjected to a hostile work environment based on her race, gender, and disability. Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (Title VII). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal anti-discrimination statutes are not "general civility code[s]." See Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII).

To establish a case of hostile work environment based on a characteristic protected by federal anti-discrimination laws, a plaintiff must show: (1) she experienced unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was sufficiently severe or



pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006) (Title VII & ADEA); Rohan, 375 F.3d at 273 n.9 (ADA). For an ADA hostile work environment claim, a plaintiff must also show that she is a qualified individual with a disability. Rohan, 375 F.3d at 273 n.9. To meet the second element, a plaintiff must show that "but for" the protected characteristic, she would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). The federal anti-discrimination statutes do not protect employees from hostility and abuse unless the objectionable conditions occur because of a protected characteristic. See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80. When analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

   Mahoney's claim of a hostile work environment stems from the treatment she received from Lt. Phillips regarding the threats against her life by drug dealers during the two-week period between the time she learned of the threats and the time she began her medical leave. Specifically, she

PJG

contends that Phillips told her she should "let the threats roll off," that he gave her a book on how to handle traumatic situations, and that he cursed her out when she persisted in seeking action by the Town to address the threats. Additionally, she complains that her supervisors told her they had no idea what an EAP was. These events, however, do not rise to the severe and pervasive standard required for a hostile work environment claim, as they were neither frequent, prolonged, nor sufficiently severe.[5] Case law shows that hostile work environment claims that have survived summary judgment have involved more egregious conduct. Compare Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted) and Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) (affirming summary judgment on a hostile work environment claim where the record contained no evidence of racially offensive conduct toward the plaintiff) with E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as b* * *hes and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks") and Fox v. Gen. Motors Corp., 247 F.3d 169, 179 (4th Cir. 2001) (concluding that a reasonable person could find hostile allegations that

---

[5] Mahoney testified in her deposition that there were no instances other than the April 10 incident in which Phillips cursed at her.



supervisors in vulgar and profane language, constantly berated and harassed plaintiff and the other disabled workers including terms such as terms such as "handicapped MF" and "hospital people"; encouraged other employees to ostracize the disabled workers and prevent them from doing their assigned tasks by refusing to give them necessary materials; and exposed plaintiff to some physical harm by requiring plaintiff to perform tasks that were too physically demanding and to sit at a too-small work table in a hazardous area) and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment); and Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000) (concluding that "a barrage of threats and gender-based insults" that the plaintiff's supervisor directed at her and that occurred more than thirty times in the first few weeks of the plaintiff's employment was sufficiently severe or pervasive to survive summary judgment). The federal anti-discrimination statutes do not ensure a pleasant work environment; they merely require one that is free of discrimination. See Graham, 191 F. App'x at 204; see also Oncale, 523 U.S. at 80. Moreover, while Mahoney speculates that she would not have been treated in that manner "if she were a dude" and that Phillips did not like African Americans, she provides no evidence to support her conjecture that Phillips treated her in this manner because of her race, gender, or disability. Accordingly, the defendant is entitled to summary judgment with regard to any claim based on an alleged hostile work environment.

### 4. Retaliation

Claims of retaliation are also analyzed under the McDonnell Douglas burden-shifting framework. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006); Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000). To establish a *prima facie* case of retaliation, a plaintiff typically must show: (1) that she engaged in protected activity; (2) that her employer acted adversely against her; and (3) there was a causal connection between the asserted adverse action and the protected activity. See Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 706 (4th Cir. 2001) (ADA). "Protected activity" under the statute falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 129 S. Ct. 846, 850 (2009). "Oppose" means "to resist or antagonize . . .; to contend against; to confront; resist; withstand." Id. (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). An employee need not instigate or initiate a complaint to be covered by the opposition clause. Id. at 851. To establish that she engaged in protected opposition activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003). Participation, which receives broader protection than opposition conduct, includes: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing" under federal employment discrimination laws. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (Title VII).

To constitute protected activity, a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated federal law. See Cordero v. Florida, No. 4:06cv529-



SPM/AK, 2007 WL 2972988, at *6 (N.D. Fla. Oct. 9, 2007) (ADA) ("[A]lthough Plaintiff complained generally that [his supervisor] treated him poorly, he never complained about disability harassment. The [employer] cannot be held liable for failing to take prompt remedial action since Plaintiff did not put the [employer] on notice that he was being harassed because of his disability."); cf. Okoli v. City of Baltimore, 648 F.3d 216, 224 & n.8 (4th Cir. 2011) (Title VII retaliation) (finding that making a complaint of "harassment" and providing a description of the behavior at issue constituted protected activity under Title VII of which the employer should have known even though the complaint did not use "magic words" identifying the specific trait (gender) protected under Title VII); see also Jordan v. Alternative Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006) (stating that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing Equal Emp't Opportunity Comm'n v. Navy Fed. Credit Union, 424 F.3d 397 (4th Cir. 2005)).

To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action " '*because* the plaintiff engaged in a protected activity.' " Holland, 487 F.3d at 218 (emphasis in original) (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)). Thus, to demonstrate causation, a plaintiff must show that the employer was aware of the protected activity. See Shield v. Fed. Express Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)). In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). To establish a causal connection based on temporal proximity alone, the

time between the employer's knowledge of the protected activity and the adverse employment action must be "very close."  Id.

In support of this claim, Mahoney argues that she engaged in protected opposition activity when she complained to her supervisors about having to work consecutive weekends.  However, she presents no evidence that she indicated to them that she attributed any difference in her work schedule to a protected characteristic.  Cf. Cordero, 2007 WL 2972988, at *6.  Similarly, Mahoney's simple inquiry about an EAP, which neither the police chief nor Lt. Phillips had ever heard of, cannot reasonably be said to put the defendant on notice that Mahoney was complaining about discrimination based on any disability.  Accordingly, with regard to these two alleged events she cannot show that the defendant was aware she was engaging in protected activity by complaining about unlawful discrimination.

Moreover, with regard to the complaint about working weekends, Mahoney has offered no evidence from which a reasonable jury could find that any of the adverse actions she complains of in this case, which all occurred in 2010, were causally connected to that 2009 incident.  See Breeden, 532 U.S. at 273-74.  Similarly, to the extent she contends that she was terminated for asking about an EAP, she cannot show that but for that inquiry she would not have been fired.  See Holland, 487 F.3d at 218.  This is especially so in light of the time lapse between that inquiry and her termination, see Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment), and Mahoney offers no evidence beyond timing to support her theory that

the defendant's denial of her request for a straight shift or her termination were causally connected to her inquiry about an EAP.

Mahoney next argues that she engaged in protected activity by seeking to take her concerns to "Town Counsel." However, even if the record supported a conclusion that Mahoney sought to present complaints of conduct prohibited by federal anti-discrimination statutes, no reasonable jury could find that had she not asked to approach Town Counsel, her request for a straight shift would not have been denied or that, but for that request, she would not have been terminated, as both events allegedly occurred months later. Therefore, the defendant is entitled to summary judgment on Mahoney's retaliation claims.

## RECOMMENDATION

All of Mahoney's claims fail as a matter of law. The court therefore recommends that the defendant's motion for summary judgment (ECF No. 20) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 16, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).